Gregory J. Goodheart, SB# 226501
ggoodheartlaw@gmail.com
GOODHEART LAW OFFICES
22736 Vanowen St., #303
West Hills, CA 91307
Tel. (818) 992-4463
Fax. (818) 992-7629

Attorney for Plaintiff, I.P.L., LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.P.L., LLC, | CASE No. |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF: |
| v. | (1) BREACH OF CONTRACT |
| CENTRAL MILLS, INC. D/B/A FREEZE, and DOES 1 through 20, inclusive, | (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| Defendants. | (3) COPYRIGHT INFRINGEMENT |
| | (4) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONAL CODE §§ 17200 et. seq. |
| | (5) UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW |
| | (6) UNJUST ENRICHMENT |
| | (7) FRAUD |

Comes now Plaintiff I.P.L., LLC ("IPL"), for its Complaint for Breach of

Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing,

Copyright Infringement, Unfair Competition under California Business & Professional Code §§ 17200 et. seq., Unfair Competition under California Common Law, and Unjust Enrichment (hereinafter the "Complaint") against Defendants Central Mills, Inc. d/b/a Freeze ("Freeze"), and DOES 1 through 20, inclusive (collectively, "Defendants"). Plaintiff, by and through its attorneys, based on its own experience and investigation and independent investigation of counsel and information and belief, alleges against Defendants as follows:

## THE PARTIES

1.      Plaintiff IPL is an entity duly organized and existing under the laws of the State of Delaware with its principal place of business at 8 The Green, Suite A, Dover, Delaware 19901. IPL is in the business of, among other things, licensing its collection of various artistic works for use on products.

2.      Upon information and belief, Defendant Freeze is a corporation duly incorporated under the laws of New York, with its principal place of business in New Jersey.

3.      Upon information and belief, at all times relevant to the instant action, Defendant Freeze manufactured, sold, and distributed clothing using licensed images to retail companies.

4.      The true names or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1 to DOES 20, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names, and Plaintiff

- 2 -

prays leave of Court to amend this Complaint to insert their true names and capacities when the same are ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein.

## **JURISDICTION AND VENUE**

5.     This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 *et seq*. Thus, this Court has federal jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a) and (b), and ancillary jurisdiction, to the extent necessary, over the remaining claims.

6.     Alternatively, this action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000. Every issue of law and fact in this action is wholly between citizens of different states. Therefore, this Court also has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

7.     This Court has personal jurisdiction over Defendants based upon the following: (a) Defendants transact and solicit business in the State of California within this judicial district; (b) Plaintiff is informed and believes and thereon alleges that certain acts complained of herein occurred in this county and within this judicial district; and (c) Defendants have designed, marketed, and/or sold infringing merchandise to retailers who are offering such merchandise to consumers in the State of California.

8.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b),

(c), (d) and 1400(a) in that: (1) a substantial part of the acts and omissions giving rise to the claims occurred in this judicial district; and (2) all Defendants are headquartered/maintain offices in or reside in and are subject to personal jurisdiction in this judicial district and/or all Defendants transact and solicit business in the State of California within this judicial district.

## **GENERAL ALLEGATIONS**

9. This action arises from Freeze's refusal to honor the terms of a written agreement with Plaintiff.

10. IPL is in the business of licensing vintage-themed artwork and graphic designs for reproduction and use on commercial products, such as t-shirts, mugs, and posters.

11. Upon information and belief, Freeze desired to license certain artwork and graphic designs from IPL for use on commercial products, such as t-shirts, mugs, and posters.

12. Upon information and belief, at all times relevant to the present action Freeze has manufactured, distributed, and sold products to retail companies.

13. Plaintiff IPL does now, and did at all times herein mentioned find, acquire, create, and license large collections of artwork and graphic designs to various third parties. IPL holds exclusive intellectual property rights in the artistic works at issue (the "Intellectual Property") including, but not limited to, exclusive rights in and to copyrights registered with the United States Copyright Office in

accordance with 17 U.S.C. §§ 408, 411(a) and 412. These registered copyrights protect each of the images infringed by Freeze, and IPL has held exclusive rights in and to these copyrighted images at all times relevant to the present action.

14.    On October 1, 2012, IPL and Freeze signed and fully executed a written agreement, identified as contract I.D. FI2116 (the "Agreement"). A true and correct copy of the Agreement is attached to this Complaint as **Exhibit A**.

15.    Pursuant to the Agreement, IPL granted to Freeze a non-exclusive, non-transferable, and non-assignable license to "access, use, copy, depict, advertise, abridge, and reproduce" IPL's graphic artwork and designs for the manufacture, production, reproduction, sale, and distribution of Licensed Products. Exhibit A, p.1.

16.    IPL granted Freeze access to IPL's artwork and graphic designs, subject to IPL's approval.

17.    Under the Agreement, Freeze agreed that it would not "manufacture, use, offer for sale, sell, advertise promote, ship, distribute, or otherwise exploit any proposed Licensed Products" without IPL's written approval.

18.    Under the Agreement, Freeze agreed that it would complete IPL's four-stage approval process for all Licensed Products. Exhibit A, p. 9.

19.    Under the Agreement, Freeze agreed that, in the event any changes were made with respect to IPL's artwork and Licensed Products, such changes required IPL's approval. Exhibit A, p. 10.

20.     Under the Agreement, Freeze agreed that in exchange for IPL's graphic designs, Freeze would pay IPL royalties in the form of a percentage of Freeze's Invoiced Sales of Licensed Products incorporating or depicting IPL's artwork during the Term of the Agreement. Exhibit A, p. 6.

21.     Under the Agreement, Freeze agreed that it would send IPL quarterly statements containing a "complete and accurate statement" of Freeze's sales of all Licensed Products and that Freeze would certify such royalty statements as "true and accurate." Freeze also agreed to pay IPL interest on any late or overdue royalty payments. Exhibit A, p. 7.

22.     Under the Agreement, Freeze agreed that IPL's acceptance of Freeze's Royalty Statements or payments, without challenge, would not waive IPL's right to challenge the accuracy of any Royalty Statement or the amount of any payment. Exhibit A, p.7.

23.     Under the Agreement, Freeze agreed that it would not attack the validity of IPL's artwork at any time during the term of the Agreement or thereafter. Exhibit A, p. 6.

24.     Under the Agreement, Freeze agreed that it would keep complete and accurate books and records relating to the Invoiced Sales and other distribution of Licensed Products for a period of three (3) years after expiration of this Agreement. Freeze also agreed that IPL would have the right to inspect Freeze's books and records relating to the Invoiced Sales of the Licensed Products upon prior written

notice of at least ten business days. Exhibit A, p. 8.

25.     Under the Agreement, Freeze agreed that in the event that an audit identified unreported or unauthorized sales by Freeze, Freeze would bear all audit costs *and Freeze would be liable for penalties of 110% of those unreported or unauthorized sales*. Exhibit A, p. 8.

26.     Freeze failed to obtain approval of certain products as required by the Agreement.

27.     Under the Agreement, Freeze agreed that it would have no right to manufacture, offer, sell, ship, advertise, promote, distribute, or use in any way Licensed Products or any promotional and packaging materials following the termination of the Agreement. Exhibit A, p. 18.

28.     Under the Agreement, Freeze agreed that it would send IPL a complete and detailed inventory of all remaining Licensed Products following the expiration of the sell-off period, and that it would either ship such remaining inventory to IPL or destroy it. Exhibit A, p. 18.

29.     Under the Agreement, Freeze agreed that during the Term of this Agreement, and for any time thereafter, and except in the ordinary course of business of selling Licensed Products pursuant to the Agreement, Freeze would not copy, or authorize the copying of IPL's artwork, Trade names, and/or Trademarks, except as authorized or required by the Agreement. Exhibit A, p. 12.

30.     Under the Agreement, Freeze agreed that it would pay attorneys' fees

for the collection of overdue royalties. Exhibit A, p. 8.

31.    Under the Agreement, Freeze agreed it would be liable for IPL's reasonable attorney's fees incurred in the event of any legal dispute if IPL was the the prevailing party. Exhibit A, p.20.

32.    On information and belief, Freeze failed to provide IPL with complete and accurate reports of gross products sold bearing IPL's artwork.

33.    On information and belief, Freeze failed to pay IPL complete and accurate royalties for products Freeze sold bearing IPL's artwork.

34.    On information and belief, Freeze advertised and sold unauthorized products bearing IPL's Intellectual Property during the term of the Agreement.

35.    On information and belief, Freeze advertised and sold unauthorized products bearing IPL's Intellectual Property following the termination of the Agreement in various retailers.

36.    On information and belief, despite warnings from IPL and knowledge of IPL's restrictions on the use of its Intellectual Property, Freeze has continued to manufacture, advertise, and/or sell unauthorized products bearing IPL's Intellectual Property after the termination of the Agreement.

37.    Under the Agreement, Freeze agreed that its failure to stop manufacturing products bearing IPL's artwork following the termination of the Agreement and/or its failure to adhere to IPL's approval process and/or its exploitation of unapproved products may cause IPL irreparable damage, entitle IPL

to seek preliminary and permanent injunctive relief, and entitle IPL to recover from Freeze IPL's attorneys' fees, costs, and expenses. Exhibit A, p. 18.

38.     As a result of Freeze's unauthorized use of IPL's artwork, the procedures IPL employs to carefully review and control the use of its artwork could not be employed and were not employed.

39.     As of the filing of this complaint, IPL has found dozens of unauthorized and unapproved uses of IPL's artwork that Freeze used in the manufacturing, production, sale, distribution, advertising, and promotion of its products to various retailers without obtaining IPL's consent.

40.     Freeze failed to comply with IPL's audit requests as required by the Agreement.

41.     Freeze failed to pay royalties for unauthorized products bearing IPL's graphic designs as required under the Agreement and after the termination of the Agreement.

## FIRST CAUSE OF ACTION

### Breach of Contract

42.     IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

43.     IPL and Freeze entered into a written contract.

44.     IPL has performed all conditions, covenants, obligations, and promises to be performed by it in accordance with the terms of the Agreement.

- 9 -

45.     Freeze did not perform the conditions, covenants, obligations, and promises to be performed by it in accordance with the terms and conditions of the Agreement.

46.     Freeze failed to perform its duties when it failed to obtain IPL's authorization before using IPL's artwork and graphic designs as provided for under the terms of the Agreement.

47.     On information and belief, Freeze made misrepresentations about the true and accurate amount of products it sold bearing IPL's artwork.

48.     On information and belief, Freeze intentionally misrepresented the information contained in Royalty Statements Freeze submitted to IPL in order to avoid paying appropriate royalties to IPL, even though Freeze certified such Royalty Statements as "true and accurate" pursuant to the terms of the Agreement.

49.     Freeze failed to perform its duties when it failed to pay IPL adequate royalties for the use of such images as provided for under the terms of the Agreement.

50.     On information and belief, Freeze intentionally failed to follow the submission and approval procedures for using IPL's artwork in order to disguise from IPL the fact that it was manufacturing and distributing unauthorized products bearing the images in question and to thus avoid paying appropriate royalties to IPL for the use of IPL's artwork.

51.     On information and belief, Freeze manufactured and/or intentionally

engaged third-party manufacturers to produce unauthorized products bearing IPL's artwork, without first obtaining IPL's consent, in order to disguise from IPL the fact that it was manufacturing and distributing products bearing the images in question and to thus avoid paying royalties to IPL for the use of IPL's artwork.

52.     Freeze failed to perform its duties when it manufactured, produced, sold, distributed, advertised, and/or promoted unauthorized products using IPL's artwork (and/or engaged third parties to do so) without first obtaining IPL's consent, as required under the terms of the Agreement.

53.     On information at belief, Freeze failed to provide IPL with true and accurate royalty statements regarding products Freeze manufactured, produced, sold, distributed, advertised, and/or promoted bearing IPL's artwork after the termination of the Agreement in order to avoid paying appropriate royalties to IPL.

54.     Freeze failed to perform its duties when it failed to timely send IPL a complete and detailed inventory of all Licensed Products outstanding following the termination of the Agreement, when it failed to pay IPL complete and accurate outstanding royalties and interest, and when it failed to ship outstanding inventory to IPL or destroy outstanding Licensed Products.

55.     On information at belief, Freeze failed to return IPL's artwork as required in the Agreement and continued to use IPL's artwork after the termination of the Agreement in order to avoid paying appropriate royalties to IPL for the use of IPL's artwork.

56.     Freeze has continued to use IPL's artwork on unauthorized products past the termination of the Agreement and in so doing Freeze violated and exceeded the terms of the Agreement.

57.     Freeze has failed to pay interest owed for its unpaid royalties.

58.     Freeze's failure and refusal to perform its obligations under the Agreement constitutes a material breach.

59.     Freeze's failure and refusal to perform its obligations is without justification or excuse.

60.     As a direct and proximate result of Freeze's material breach of the Agreement, IPL has incurred actual and consequential damages in an amount to be determined at the time of trial, including, without limitation, attorney's fees and expenses proximately resulting from Freeze's breach of the agreement.

61.     As a direct and proximate result of Freeze's breach, IPL has suffered damages.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

62.     IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     The Agreement and its terms regarding Freeze's obligations past the expiration of the Agreement are subject to the implied covenant of good faith and fair dealing requiring that Freeze act in a manner faithful to the purpose and

- 12 -

obligations of the Agreement.

64.     IPL had a reasonable and valid expectation pursuant to the terms of the Agreement that Freeze would do all things reasonably necessary to fulfill its obligations under the Agreement.

65.     IPL has performed all conditions, covenants and promises to be performed by it in accordance with the terms of the Agreement.

66.     Freeze has engaged in conduct that contravenes the purposes and objectives of the Agreement including, but not limited to, failing to pay adequate royalties to IPL for the use of IPL's Intellectual Property and using IPL's Intellectual Property without authorization. As a direct and proximate result of this conduct, Freeze has caused damage to IPL in an amount to be proved at trial including, without limitation, attorney's fees and expenses proximately resulting from Freeze's material breach.

## THIRD CAUSE OF ACTION

### Copyright Infringement under 17 U.S.C. §§ 501-505

67.     IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

68.     At all times relevant to the present action, IPL has owned and/or held exclusive rights to artwork and valid copyrights in a variety of images and original works, including but not limited to registered copyrights for each and every image relevant to this Complaint. Such images and original works have been properly

registered in accordance with 17 U.S.C. §§ 408 and 411.

69.     Defendants had access to IPL's Intellectual Property and copyrighted images as a result of the Agreement.

70.     On information and belief, Defendants had knowledge that IPL owned and/or held exclusive rights to the copyrighted images from 2012 to the present.

71.     On information and belief, from 2014 to the present Freeze misappropriated IPL's Intellectual Property by manufacturing, advertising, and/or selling unauthorized products bearing images substantially similar to IPL's registered copyrights and Intellectual Property.

72.     On information and belief, from 2014 to the present Freeze infringed IPL's Intellectual Property by creating, making, and/or developing directly infringing derivative works from the images and/or by producing, distributing, and/or selling products that use IPL's copyrighted images without authorization through a national and/or international network of retail stores and on-line outlets.

73.     Defendants produced, distributed, advertised and/or sold these unauthorized and infringing goods bearing IPL's Intellectual Property without any permission, license, or other authorization from IPL.

74.     Defendants' above-stated acts violated IPL's exclusive rights to the Intellectual Property.

75.     Defendants' above-stated acts violated IPL's exclusive rights to distribute and sell products related to the copyrighted images and IPL's exclusive

- 14 -

rights to control the manufacture, production, sale, advertisement, and/or promotion of products related to the copyrighted images.

76.    IPL notified each Defendant of its infringing and illegal activity, and despite warnings and requests from IPL, Defendants have continued to manufacture, advertise, promote, and/or sell unauthorized products bearing IPL's copyrighted images.

77.    Due to Defendants' acts, IPL has suffered general and special damages in an amount to be established at trial.

78.    Due to Defendants' acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of IPL's rights in the images.

79.    IPL is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the images in an amount to be established at trial.

80.    IPL has no adequate remedy at law and has suffered, and is continuing to suffer, irreparable harm and damage as a result of the aforesaid acts of infringement.

81.    Unless this Court enjoins Defendants by prohibiting Defendants and their respective officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Defendants from: (1) further manufacturing, producing, displaying, promoting, distributing, and selling unauthorized and

- 15 -

infringing products bearing IPL's Intellectual Property; and (2) further violating or inducing or contributing to the violation of any of IPL's exclusive rights to the Intellectual Property, Defendants' unlawful infringement of IPL's copyrights will continue to cause IPL irreparable harm and damage. Accordingly, IPL seeks temporary as well as preliminary and permanent injunction relief pursuant to 17 U.S.C. § 502.

82.     Defendants' infringement of the images' content is willful, with knowledge, reckless, and/or in blatant disregard for IPL's rights in the images.

83.     Accordingly, Defendants are liable for willful, exemplary, and enhanced statutory damages of up to and including one hundred and fifty thousand dollars ($150,000.00) per work and/or IPL's actual damages in the form of either Defendants' profits attributable to the infringement or IPL's lost profits as a result of the infringement and a preclusion from deducting certain costs relevant to disgorgeable profits.

## FOURTH CAUSE OF ACTION

### Unfair Competition under California Business & Professional Code §§ 17200 et. seq.

84.     IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

85.     Defendant's acts and practices as detailed above constitute acts of unfair competition. Defendant has engaged in an unlawful, unfair or fraudulent business act and/or practice within the meaning of California Business & Professions Code § 17200.

86.     Defendant has engaged in an "unlawful unfair, or fraudulent" business act and/or practice by engaging in the conduct set forth above.  These business acts and practices violated numerous provisions of law, including, *inter alia*, state and federal laws as set forth above.

87.     Through the above-described conduct, Defendant has engaged in an "unfair" business act or practice by falsely holding out and selling Freeze's products as authorized and lawful merchandise in that any past or present justification for such business acts and practices described above is outweighed by the gravity of the resulting harm, particularly considering Defendant's refusal to notify the general public of the true facts and/or available alternatives. Defendant's conduct offends public policy, is immoral, unscrupulous, unethical and offensive, and causes substantial injury to consumers.

88.     By engaging in the above-described conduct, Defendant has engaged in a "fraudulent" business act or practice in that the business acts and practices described above had a tendency and likelihood to deceive the general public into believing Defendant was authorized to manufacture, produce, advertise, and/or sell the unauthorized products bearing IPL's Intellectual Property.

89.     Pursuant to California Business & Professions Code § 17203, Plaintiff seeks temporary, preliminary and/or permanent relief from this Court prohibiting Defendant from continuing to engage in the unlawful, unfair, and/or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, particularly in light of the public misperception created by Defendant and/or its representatives' misstatements and omissions of material fact, and/or relief as the Court deems just and appropriate to all persons with a vested interest therein.

90.     IPL additionally seeks appropriate equitable monetary relief as the Court deems just and appropriate to all persons with a vested interest therein.

## FIFTH CAUSE OF ACTION

### Unfair Competition under California Common Law

91.     IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

92.     As alleged above, Defendant has engaged in deceitful, deceptive, unfair, and unlawful practices by, among other things: copying or taking IPL's images or portions thereof without compensating IPL and knowingly producing, manufacturing, advertising, promoting, and/or selling unauthorized knock-off products in competition with IPL's lawful licensees' products.

- 18 -

93.     Freeze's foregoing conduct constitutes unfair business practices and unfair competition in violation of California common law.

94.     As a direct and proximate cause of Freeze's unfair competition and unfair business practices, Plaintiff has suffered and will continue to suffer damages.

95.     Plaintiff has no adequate remedy at law and has suffered, and continues to suffer, irreparable harm and damage as a result of the aforesaid infringing and unlawful acts.

96.     Defendant's conduct will continue to cause IPL irreparable harm and damage unless Defendant and its respective officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Freeze are permanently enjoined by the Court from manufacturing, producing, displaying, promoting, advertising, distributing, and selling the unauthorized products in violation of California common law.

97.     Defendant acted with a willful and conscious disregard of the rights of others and is guilty of fraud and malice. Plaintiff is entitled to damages for the sake of example and by way of punishing Defendant.


## SIXTH CAUSE OF ACTION

### Unjust Enrichment

98.    IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99.    IPL is entitled to full payment for Freeze's use of IPL's graphic designs and artwork.

100.   On information and belief, Freeze has unjustly profited from the unauthorized and unlawful use of IPL's graphic designs and artwork.

101.   Freeze had full knowledge of IPL's licensing practices as a result of the Agreement and IPL's reasonable expectation of being compensated for Freeze's use of IPL's graphic designs and artwork.

102.   Freeze has failed to remit payment for the use of IPL's graphic designs and artwork.

103.   On information and belief, Freeze, with knowledge that Freeze's products were unauthorized, have continued to manufacture, distribute, advertise, and sell Freeze's unauthorized and infringing products bearing IPL's graphic designs and artwork.

104.   As a direct and proximate result of Freeze's material breach of contract and subsequent unauthorized use of IPL's graphic designs and artwork, Freeze has been unjustly enriched and has benefited at the direct expense of IPL.

105.   Consequently, IPL respectfully requests judgment be entered against Freeze in an amount to be proven at trial, and such other and further relief as may be just, proper and allowable, including pre-judgment and post-judgment interest and the costs of this suit.

## SEVENTH CAUSE OF ACTION

### Fraud

106.   IPL re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

107.   On information and belief, Freeze intentionally misrepresented the information contained in Royalty Statements Freeze submitted to IPL and/or failed to submit to IPL accurate Royalty Statements reflecting actual products sold in order to avoid paying appropriate royalties to IPL, even though Freeze certified that it would send "true and accurate" Royalty Statements pursuant to the terms of the Agreement.

108.   On information and belief, Freeze intentionally failed to follow IPL's required submission and approval procedures for using IPL's graphic designs and artwork in order to disguise from IPL the fact that it was manufacturing and distributing products bearing the images in question and to thus avoid paying appropriate royalties to IPL for the use of IPL's graphic designs and artwork.

109.  On information and belief, Freeze manufactured and/or intentionally engaged third-party manufacturers to produce unauthorized products bearing the graphic designs and artwork, without first obtaining IPL's consent, in order to disguise from IPL the fact that it was manufacturing and distributing products bearing the images in question and to thus avoid paying royalties to IPL for the use of IPL's graphic designs and artwork.

110.  On information and belief, Freeze made misrepresentations about the true and accurate amount of products sold bearing IPL's graphic designs and artwork and about having the right to manufacture, distribute, and sell unauthorized products bearing IPL's graphic designs and artwork with full knowledge that such misrepresentations were false.

111.  On information and belief, Freeze made such misrepresentations with the intent to defraud and deceive IPL and with the intent to induce IPL to act in a way as to continue to allow Freeze access to its graphic designs and artwork and with the intent to drive IPL out of business. At the time Freeze made its promises to IPL under the Agreement, Freeze had no intention of performing such promises and obligations.

Complaint

112.   IPL, at the time Freeze made such false representations and intentionally concealed facts and took the actions herein alleged, was ignorant of the falsity of Freeze 's representations and believed them to be true. IPL, at the time the promises were made and at the time Freeze took the actions herein alleged, was ignorant of Freeze's secret intention not to perform and IPL could not, in the exercise of reasonable diligence, have discovered Freeze's secret intention. In reliance on these representations, IPL was induced to and did give Freeze access to its protected Intellectual Property, which Freeze then stole and sold as its own. Had IPL known the actual facts and Freeze's true intentions, IPL would not have taken such action or entered into the Agreement. IPL's reliance on Freeze's representations was justified because Freeze entered into the Agreement with IPL and promised to pay accurate royalties to IPL.

113.   As a proximate result of Freeze's fraud and deceit and the facts herein alleged, IPL has been damaged in the sum to be proved at trial.

114.   In doing the acts herein alleged, Freeze acted with oppression, fraud, and/or malice, and IPL is entitled to punitive damages in a sum to be proved at trial.

115.   IPL respectfully requests judgment be entered against Freeze in an amount to be proven at trial, and such other and further relief as may be just, proper and allowable, including pre-judgment and post-judgment interest and the costs of this suit.

## **PRAYER FOR RELIEF**

WHEREFORE, IPL prays for judgment against Freeze as follows:

1.     For damages in the amount to be determined at trial, plus interest.

2.        A temporary restraining order and preliminary and permanent injunction prohibiting Freeze, it respective officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Freeze from further violating or inducing or contributing to the violation of the Agreement or the violation of IPL's exclusive rights in its artwork.

3.        A permanent injunction prohibiting Freeze from further manufacturing, producing, displaying, promoting, distributing, and selling unauthorized and infringing products bearing IPL's images in violation of the Agreement.

4.        A temporary restraining order and preliminary and permanent injunction requiring any known and current retailers selling Freeze's unauthorized products, to transfer any and all such merchandise to IPL.

5.        A temporary restraining order and preliminary and permanent injunction requiring Freeze to return any and all of IPL's graphic designs and artwork.

6.        For a temporary, preliminary and/or permanent order prohibiting Freeze from continuing to engage in unlawful, unfair, or fraudulent business acts or practices and/or appropriate equitable monetary relief as the Court deems just and appropriate to all persons with a vested interest therein.

7.        For relief to the extent Freeze has been unjustly enriched and has benefited at the direct expense of IPL.

8.        For actual and consequential damages for Freeze's breach of contract and breach of the implied covenant of good faith and fair dealing in a sum according to proof.

9.    Ordering an account of and from, and entering judgment against, Defendants for:

    a.  All profits received by Defendants from the licensing, designing, distribution, marketing, or sale of products bearing IPL's graphic designs and artwork or any other infringing merchandise.

    b.  All damages suffered by IPL as a result of Defendants' copyright infringements.

    c.  Enhanced damages as a result of Defendants' willful infringement and/or precluding Defendants from deducting certain costs relevant to disgorgeable profits.

10.   In the alternative, at the election of IPL, awarding statutory damages against Defendants:

    a.  In an amount up to $150,000 per copyrighted work, as a result of copyright infringement for each copyrighted work, as provided for in 17 U.S.C. § 504(c)(1-2); and

    b.  In an amount up to $25,000 per violation of 17 U.S.C. § 1202, as

- 25 -

provided for in 17 U.S.C. § 1203(c).

11.     For relief and punitive damages as a result of Freeze's fraudulent and deceitful actions.

12.     For interest thereon at the maximum rate allowed by law against Freeze.

13.     For costs of suit incurred herein, including reasonable attorneys' fees.

14.     For such other and further relief as this Court deems just and proper.

Date: April 9, 2018          Signed: /s/ Gregory J. Goodheart

GREGORY J. GOODHEART
GOODHEART LAW OFFICES
*Attorneys for Plaintiff I.P.L., LLC*

## **DEMAND FOR JURY TRIAL**

IPL, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands a trial by jury of all issues under this Complaint triable of right by a jury.

Date: April 9, 2018          Signed: /s/ Gregory J. Goodheart

GREGORY J. GOODHEART
GOODHEART LAW OFFICES
*Attorneys for Plaintiff I.P.L., LLC*

Complaint